UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6137-CR-DIMITROULEAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LIDIA HERRERA,

    Defendant.

_____/



## DEFENDANT LIDIA HERRERA'S OBJECTIONS TO
## THE PRESENTENCE INVESTIGATION REPORT

The Defendant, Mrs. Lidia Herrera, through counsel, files her objections to the Presentence Investigation Report and states;

**Objection Number One, Page 5, Paragraph 9;**

The Defendant objects to the representation that Government Informant Arturo Abascal "spent 90 minutes with Mrs. Herrera, during which time they discussed what she hoped to do once they obtained the money from the robbery."

Lidia Herrera was home alone on March 4, 2000, when Mr. Abascal arrived. Mr. Abascal came to the Herrera Home to meet with Mr. Herrera. He did not come to meet with Mrs. Herrera. The Defendant admits that conversations took place between herself and Mr. Abascal. What must be clarified is that the length of this conversation was extremely short. They did not spend 90 minutes discussing what was going to be done with the money. This fanciful conversation was



similar to what someone would do if they won the Florida Lotto. The conversation was brief but nevertheless misguided.

This meeting was tape recorded by Mr. Abascal. The tape recording accurately documents exactly what transpired on this day. Mrs. Herrera was sitting down watching a television movie accompanied by Mr. Abascal. A brief conversation took place at the beginning of the tape. The conversation then turned to the movie and other matters of a non criminal nature.

Mrs. Lidia Herrera has accepted complete responsibility for her involvement in this case. She continues to accept responsibility for her actions. The implication from this paragraph is that the conspiratorial scheme encompassed the entire 90 minutes.

This objection is more in the nature of a clarification of Mrs. Herrera's position. This clarification does not have any impact on the ultimate outcome of this case. The conversations that transpired throughout the pendency of the conspiracy transpired primarily between Mr. Herrera and Mr. Abascal. Clearly, Mrs. Herrera knew what was going on, she was aware of the conspiratorial objective, and she participated therein. She never would have been permitted to enter a plea to Misprision of Felony in violation of Title 18 , United States Code, Section 4, had she been the organizer or participant in the actual (attempted) offense.

**Objection Number 2, Page 6, Paragraph 12;**

Mrs. Lidia Herrera was home on the evening of Sunday, March 5, 2000, when Mr. Abascal arrived. Mrs. Herrera again objects to the characterization that (mid paragraph) "The Herreras and Abascal continued their discussions of the plan."

Mrs. Herrera is greatly concerned that we will lose sight of the fact that the conversations were primarily between Mr. Herrera and Mr. Abascal. The conversations were in the Herrera

2

Apartment and she was present, however she was not always intricately involved in each conversation. The representation of her involvement as set forth in Paragraph 16 accurately reflects her involvement in this case.

**Objection Number 5, Page 9, Paragraph 28, "Acceptance of Responsibility";**

Mrs. Lidia Herrera objects to the denial of the three point reduction for acceptance of responsibility. The Defendant was not informed of this violation until considerably after the sample was provided. Undersigned counsel was advised of the alleged positive result in a telephone conversation prior to August 16, 2000.

Mrs. Lidia Herrera requests that the she granted the three point reduction pursuant to Federal Sentencing Guideline 3E1.1 "Acceptance of Responsibility." She has acknowledged her guilt early on in this matter. Additionally she has cooperated with the United States Attorney's Office by testifying on behalf of the Government. The Defendant willingly met with Assistant United States Attorney Van Vliet on the Sunday afternoon prior to trial to discuss her testimony. At every stage of these proceedings she has been available for law enforcement. Mrs. Herrera has fulfilled all of her responsibilities to the government. Mrs. Herrera acknowledges smoking marijuana after her arrest by The Florida Department of Law Enforcement. She was arrested on March 6, 2000 by the Florida Department of Law Enforcement, after posting bond on the State of Florida charges was when she smoked the illegal substance. Her husband was still incarcerated and she was extremely nervous. She acknowledges that her behavior was terribly improper and illegal. This incident took place before her case was transferred to Federal Court. She has not violated any of the conditions of her bond as set by Magistrate Judge Snow. The positive urine was provided on July 25, 2000, the second urine sample which tested negative was provided on August 16, 2000.

**Objection Number 6, Page 12, Paragraph 45, "Physical Condition";**

Mrs. Lidia Herrera has been suffering from a serious cold and sinus infection for several weeks. During the time in which the PreSentence Investigation Report was being prepared, she was taking over the counter medication. Additionally she was given prescribed medication by her mother to assist her with sleep. The medication she received from her mother was "Tranxene."

According to The Prescription Drug Foundation located in Miami, Florida, "Tranxene is a benzodiazepine used to treat nervousness or anxiety, seizures, and alcohol withdrawal." Possible side effects include "excessive daytime drowsiness, unusual weakness, dizziness, lightheadedness, headache, clumsiness or unsteadiness.

According to Mrs. Herrera her mother gave her five tablets to calm her nerves. Her husband was remanded to custody immediately after his conviction which we believe took place on a Thursday, August 10, 2000. Mrs. Herrera received the medication from her mother on the following Saturday, August 12, 2000. The medication was taken on Saturday, Sunday, and Monday to calm her nerves and permit her to sleep.

**Objection Number 7, Page 12, Paragraph 49;**

The Defendant strenuously objects to the statement that "According laboratory technicians, the specimen was very diluted and was negative for the presence of any illicit substances." The direct inference from this statement is that Mrs. Lidia Herrera tampered with the urine sample.

Undersigned counsel accompanied Mrs. Lidia Herrera to the United States Probation Office on August 16, 2000. At that time the statement for acceptance of responsibility was hand delivered to Probation Officer Westfield. Mrs. Herrera accompanied U.S.P.O. Westfield to a private room so that a second urine sample could be provided. At the time of the testing, Mrs. Herrera was allowed

4

to enter a room alone to provide another sample. The Defendant did not possess any objects or canisters when she entered the testing room. Probation Officer Westfield remained outside with the door ajar. There was never any indication that the urine sample was tampered with by the Defendant at the time the sample was provided.

The Defendant requests that Paragraph 49 be deleted from the Presentence Investigation Report. As presently written, the Probation Office is using laboratory technician innuendo in an attempt to bolster the alleged dirty urine provided on July 25, 2000. The Probation Office is well aware that "THC" may be detected in someone system for months after the last dosage. The August 16, 2000 negative tests indicates that she had not violated the conditions of her bond, thereby qualifying Mrs. Herrera for a reduction pursuant to 3E1.1 of the Federal Sentencing Guidelines.

Undersigned counsel received the PreSentence Investigation Report late on the afternoon of Monday, August 21, 2000. Since the receipt of this document counsel has attempted to resolve the objections with Assistant United States Attorney Van Vliet. These attempts were unsuccessful as we continued to miss each other's telephone calls. Prosecutor Van Vliet is out of town on business. Undersigned counsel apologizes for the tardiness in filing the Defendant's objections.

Respectfully submitted,

KATHLEEN M. WILLIAMS
FEDERAL PUBLIC DEFENDER

By: *[signature]*

Robert N. Berube
Supervisory Assistant
Federal Public Defender
Florida Bar No. 304247
Attorney for Defendant
101 N.E. 3rd Avenue, Suite 202
Fort Lauderdale, Florida 33301
(954) 356-7436 / (Fax) 356-7556

5

### CERTIFICATE OF SERVICE

I certify that a true and correct copy of the aforementioned motion was mailed on this 25th day of August, 2000, to Theresa Van Vliet, Assistant United States Attorney, at 299 East Broward Boulevard, Fort Lauderdale, Florida 33301, and to Marilyn G. Westfield, United States Probation Officer, 300 N.E. 1st Avenue, Room 315, Miami, Florida 33132. A courtesy copy is being provided to Richard Janes, United States Probation Officer, 299 East Broward Boulevard, Fort Lauderdale, Florida. U.S.P.O. Westfield may be on annual leave at the time of sentencing.

Robert N. Berube

**EXHIBIT 1**

MEDICATION: TRANXENE 3.75MG TABLET

**GENERIC NAME:** CLORAZEPATE (klor-AZ-e-pate)

**COMMON USES:** This medicine is a benzodiazepine used to treat nervousness or anxiety, seizures, and alcohol withdrawal. It may also be used to treat other conditions as determined by your doctor.

**HOW TO USE THIS MEDICINE:** Follow the directions for using this medicine provided by your doctor. STORE THIS MEDICINE at room temperature, away from heat and light. IF YOU MISS A DOSE OF THIS MEDICINE and you are using it regularly, take it as soon as possible. If you do not remember until later, skip the missed dose and go back to your regular dosing schedule. Do not take 2 doses at once.

**CAUTIONS:** DO NOT EXCEED THE RECOMMENDED DOSE or take this medicine for longer than prescribed without checking with your doctor. Exceeding the recommended dose or taking this medicine for longer than prescribed may be habit-forming. DO NOT DRIVE, OPERATE MACHINERY, OR DO ANYTHING ELSE THAT COULD BE DANGEROUS until you know how you react to this medicine. Using this medicine alone, with other medicines, or with alcohol may lessen your ability to drive or to perform other potentially dangerous tasks. BEFORE YOU BEGIN TAKING ANY NEW MEDICINE, either prescription or over-the-counter, check with your doctor or pharmacist. FOR WOMEN: THIS MEDICINE HAS BEEN SHOWN TO CAUSE HARM to the human fetus. IF YOU PLAN ON BECOMING PREGNANT, discuss with your doctor the benefits and risks of using this medicine during pregnancy. THIS MEDICINE IS EXCRETED IN BREAST MILK. DO NOT BREAST-FEED while taking this medicine.

(CONTINUED ON NEXT PAGE)

Copyright 2000 First DataBank, Inc. All rights reserved. Version Date Aug 2000
The information in this monograph is not intended to cover all possible uses, directions, precautions, drug interactions, or adverse effects. This information is generalized and is not intended as specific medical advice. If you have questions about the medicines you are taking or would like more information, check with your doctor, pharmacist, or nurse.

ION: TRANXENE 3.75MG TABLET

that may go away during treatment, include excessive daytime
ess, lightheadedness, headache, clumsiness, or
bothersome, check with your doctor. If you notice other
r doctor, nurse, or pharmacist.

licines or medical conditions may interact with this
WCIST of all prescription and over-the-counter medicine that
:INE if you are also taking HIV protease inhibitors.
l CONDITION may be needed if you are taking clozapine,
medicine for seizures. Inform your doctor of any other medical
breast-feeding. Contact your doctor or pharmacist
about using this medicine.

contact your local poison control center or emergency room
include confusion, slow reflexes, clumsiness, deep sleep,

THIS MEDICINE with others for whom it was not
for other health conditions. KEEP THIS MEDICINE out of the

aBank, Inc. All rights reserved. Version Date Aug 2000
ot intended to cover all possible uses, directions, precautions, drug
This information is generalized and is not intended as specific
estions about the medicines you are taking or would like more
heck with your doctor, pharmacist, or nurse.